IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

CHARLES MACKEY,

    Plaintiff,

VS.                         1:04-CV-182 (WLS)

SERGEANT BELL,

    Defendant.

## RECOMMENDATION

    This is a § 1983 action brought by a Georgia State prisoner who was an inmate at Autry State Prison in Pelham, Georgia in July 2004, when the circumstances giving rise to this lawsuit occurred. The defendant was employed at the prison as a Correctional Officer and evidently was a member of the prison's Certified Emergency Response Team. The gravamen of plaintiff's complaint is that he was subjected to excessive force in violation of the Eighth Amendment's proscription against cruel and unusual punishment (Doc. # 2, Complaint). Presently pending is the defendant's motion for summary judgment in which it is alleged that the force brought to bear upon the plaintiff was in a good faith effort to restore order and maintain discipline and prevent the plaintiff from harming himself. Further, the defendant maintains that if it is found that the plaintiff has shown a violation of his constitutional rights he is protected by the defense of qualified immunity (Docs. # 12 - 14). Plaintiff was given notice of the defendant's motion and of his opportunity to respond in opposition (Doc. # 15). The plaintiff has filed a response in opposition to the granting of defendant's motion (Docs. # 17 - 19).

*Summary Judgment Standard*

Summary judgment may be granted only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Warrior Tombigbee Transportation Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). The evidence and all factual inferences made therefrom must be viewed by the court in the light most favorable to the party opposing the motion. However, the opposing party cannot rest on his pleadings to present an issue of fact but must respond to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts which must be presented to a jury for resolution. See Van T. Junkins & Assoc. v. U.S. Industries, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden of identifying portions of the pleadings, depositions, answers to interrogatories, and admissions which he believes demonstrate an absence of any genuine issue of material fact. Hairston v. The Gainesville Sun Publishing Co., 9 F.3d 913 (11th Cir. 1993). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

If the movant successfully meets his burden, the burden then shifts to the non-movant to establish by going beyond the pleadings that there are genuine issues of material fact to be resolved by a fact-finder. Clark v. Coats & Clark, 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. Anderson v. Liberty Lobby, 477 U.S. 242 (1986). The question is whether the record as a whole could lead a rational trier of fact to find for the non-movant. Brown v. City of Clewiston, 848 F.2d 1534, 1543 (11th Cir. 1988).

*The Facts*

The parties agree that on July 2, 2004, the plaintiff tied one end of a bed sheet around his neck and the other to the end of a second story stair rail of his prison dormitory in an apparent attempt to commit suicide. The defendant and another correctional officer were able to grab plaintiff and prevent him from jumping. At this point the parties begin to differ as to what happened. From his complaint and brief in opposition to the defendant's motion the plaintiff maintains that when defendant and the other officer grabbed his clothing he immediately let go of the stair rail and offered no resistance to the officers who then lifted him back over the rail and placed him face down on the floor. According to the plaintiff it was at this point, while he was on the floor and offering no resistance to the officers, that the defendant twisted his right arm behind his back with sufficient force to break his arm.

In his answer the defendant denies all of plaintiff's allegations, however in his brief in support of his motion the defendant admits that "[i]n order to prevent plaintiff from injuring himself, defendant Bell subdued Plaintiff through the use of physical force." (Doc. # 13, p. 1). Further, the defendant states that, "[c]onsidering that plaintiff was a threat to himself and a potential threat to defendant Bell, it is objectively clear that any harm to plaintiff's arm is not 'harmful enough to establish a constitutional violation.' Laconically stated, plaintiff was going to die and defendant Bell prevented that from occurring. A hurt arm pales in comparison to the loss of a human life." (Doc. # 13, p. 4)

The use of force is admitted by the defendant who further admits that plaintiff's arm was "hurt." Plaintiff states that his arm was broken which the defendant does not deny in his motion. According to the plaintiff, the use of force was not necessary as he had already been subdued and

3

was offering no resistance to defendant Bell or the other officer.  According to the defendant, the use of force resulting in an injury to plaintiff's arm occurred during the course of subduing plaintiff to keep him from attempting to take his life.

The affidavit of the defendant offered in support of his motion states only that, "[a]ny actions taken as they relate to Inmate Charles Mackey were within the scope of my authority and undertaken pursuant to the performance of my official duties."  (Doc. # 13, Exhibit A, ¶ 1). To this somewhat vague statement the affidavit of the plaintiff responds, "that any actions taken as they relate to inmate Charles Mackey were not within the scope of correction [sic] Sergeant Bell and not undertaken pursuant to his performance [sic] official duties." (Doc. # 18, Exhibit A, ¶ 1).

*The Eighth Amendment and Excessive Force*

"The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. . . .  Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. . . . After incarceration only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999) (internal citations omitted)

"To establish an Eighth Amendment claim for excessive force, however, Plaintiff must meet an intent requirement more stringent than Farmer's deliberate-indifference standard: she must prove that 'force was applied . . . maliciously and sadistically for the very purpose of causing harm.'" Campbell, 169 F.3d at 1374, (quoting Whitley v. Albers, 475 U.S. 312,320-21, 106 S.Ct. 1078 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)); see also Hudson v. McMillian, 503 U.S. 1, 6-7, 112 S.Ct. 995 (1992).  "[W]hether the measure taken inflicted

4

unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 320-21 (quoting Johnson, 481 F.2d at 1033)).

The Whitley case dealt with the use of force in restoring order in the face of a prison riot situation which is not the case here.  However, in the case of Hudson v. McMillian , 503 U.S. 1, 112 S.Ct. 995 (1992), "the Supreme Court extended Whitley's holding outside the prison-riot context and applied the same heightened intent requirement to force used as a prophylactic, preventive measure." Campbell, 169 F.3d at 1374.

As noted by the court in Campbell, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." (quoting Hudson, 503 U.S. at 7, 112 S.Ct. 995 (quoting Whitley, 475 U.S. at 321-22, 106 S.Ct. 1078 (quoting Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861 (1979))).

Therefore, if the force used against the plaintiff occurred after he had been subdued and was offering no resistance to the defendant it necessarily follows that it was done maliciously and sadistically for the very purpose of causing harm in violation of his Eighth Amendment rights.  On the other hand if the force used was in a good faith effort to restore order and discipline and keep the plaintiff from harming himself then the Eight Amendment would not have been violated.  Critical to this determination is when the use of force occurred.  In his affidavit the defendant does not swear that it occurred when subduing plaintiff to keep him from harming himself.  Further, according to the plaintiff there were two other prison officials present,

neither of whom submitted affidavits on this critical issue.

Resolving all inferences in favor of the non moving party on summary judgment as I must, I find that the defendant has failed to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Exactly when in the chain of events the defendant used force against plaintiff is a material factual issue.

*Qualified Immunity*

Defendant maintains that if plaintiff is found to have alleged a violation of a constitutional right he is nonetheless protected from liability by the doctrine of qualified immunity. Unfortunately for defendant such is not the case in this Circuit when the alleged constitutional violation is excessive force in violation of the Eighth Amendment.

> In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution by the Supreme Court decisions in Hudson and Whitley. See Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002). There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation Id. The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment. If he has done so, that is the end of the inquiry.

Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002)

> The same is true in this case where the subjective element of the constitutional violation is that the force was used and the injury inflicted not in a good faith effort to maintain and restore discipline, but maliciously and sadistically for the very purpose of causing harm to the plaintiff. Acting with that specific malevolent intent to cause harm, at least where (as here) more than *de minimis* injury results, violates the Cruel and Unusual Punishment Clause of the Eighth Amendment, and that was clearly established law at the time Breeden and Gomez entered Johnson's cell on August 22, 1995. See Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992);

6

Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078 (1986).

Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002)

Here the alleged constitutional violation occurred in 1994, well after the decisions in Hudson and Whitley, thus the law was clearly established and the defense of qualified immunity is not available to defendant.

*Official Capacity Claim*

To the extent the plaintiff is seeking to maintain his claim against this defendant in his official capacity, this would in essence be a claim against the State of Georgia and therefore barred by the Eleventh Amendment doctrine of sovereign immunity. Will v. Michigan Dep't. Of State Police, 491 U.S. 58 (1989).

*Conclusion*

For the reasons contained herein it is the **RECOMMENDATION** of the undersigned that the defendant's motion for summary judgment be **DENIED** in his individual capacity, but **GRANTED** to the extent that plaintiff seeks to maintain an official capacity claim. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, Chief United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED,** this 16th day of February 2006.

/s/ Richard L. Hodge
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE